Donald Ray PHILLIPS, Appellant,

v.

JENMAR, INC. d/b/a Designer Marble; Denis S. Kline, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 99–SC–0157–WC.

Supreme Court of Kentucky.

Aug. 26, 1999.

Lee M. Dean, Harrodsburg, for Appellant.

Steven R. Armstrong, Boehl, Stopher, & Graves, Lexington, for Appellee Jenmar, Inc. d/b/a Designer Marble.

## OPINION OF THE COURT

This workers' compensation appeal concerns whether the evidence compelled a conclusion that claimant's injuries were· sustained in the course and scope of his employment.

Claimant was employed as a laborer from 1990 until August 18, 1995, the date on which he was injured. It is undisputed that he suffered from alcoholism, and he was accustomed to drinking large quantities of beer each day. A day or two before the accident, claimant was taken to a clinic for emergency medical treatment during working hours by the plant owner's secretary. There was evidence that claimant decided to quit drinking alcohol and that he began to suffer symptoms associated with delirium tremens. Although claimant reported for work on Thursday, August 17, 1995, he experienced fairly severe tremors and cramping in his hands. He spent most of the day in the break room being attended by the secretary. There was conflicting evidence concerning whether claimant was instructed by the owner/manager not to return to work until the following Monday, August 21, 1995. In any event, claimant returned to work at some time before 8:00, A.M., on Friday, August 18, 1995. He climbed a rack on the production floor in order to retrieve a mold, experienced severe tremors, fell from the rack, and struck his head on the concrete floor. Claimant sustained a severe head injury and injured his right arm. He has not worked since that date.

The owner/manager testified that claimant reported for work on Monday, August 14, 1995, with bruises on his legs and could not explain what had caused them. On Wednesday, August 16, claimant showed him bruises which covered his midriff, at which point he had asked his secretary to make a doctor's appointment for claimant. An appointment was scheduled for August 21; however, on Thursday, August 17, claimant indicated that he had been sick throughout the previous night. The owner, therefore, directed his secretary to take claimant to the Lexington Clinic. He was later informed that the examining physician attributed claimant's symptoms to his alcoholism. The owner testified that claimant had attempted to continue working after returning from the clinic; however, the tremor in his hands was so severe that the owner had sent him to the break room in the company of the secretary to await a ride home. The owner also testified that on Thursday afternoon, he had directed claimant to take Friday off because of his physical condition and indicated that perhaps he would be well enough to work on Monday. He testified that he arrived at work at about 8:15 on Friday morning and came upon claimant gripping the production rack and trembling. He indicated that claimant's grip failed, and he fell backwards before there was time to take action.

Claimant admitted that he had quit drinking alcohol a few days prior to the accident, that he had suffered from delirium tremens, and that the secretary had taken him to the Lexington Clinic where he was informed that alcohol withdrawal was the cause of his symptoms. He did not recall talking to the owner during the week of the injury and denied having been told not to report to work on Friday, August 18. He testified that the secretary knew he was at work that day, that they had spoken at approximately 8:00 that morning, and that she did not send him home.

Claimant's brother and sister both testified concerning an alleged statement by the secretary to the effect that she had allowed claimant to work on Friday even

though he appeared pale and shaken. A co-worker testified that the owner was on the production floor when claimant fell. Another co-worker testified that he had hurt his back and foot and was in the break room with claimant on Thursday, August 17, when the owner had instructed both of them not to report for work on Friday, August 18.

The secretary testified concerning claimant's bruises and the fact that she had taken claimant to the clinic on Wednesday, August 16, and was present when he was informed that his problems were due to alcohol. She testified that claimant reported to work on Thursday, August 17, but that he was shaking, and his hands were cramping. She informed the owner who directed her to take claimant to the break room to await a ride home. Later that day, she saw claimant working and was instructed by the owner to stay with claimant in the break room until he got a ride. She stated that she was present when the owner instructed both claimant and another worker not to report for work on Friday, August 18. She testified that she worked in one building and that the production floor was in another building. She knew that claimant had appeared at work on Friday but denied knowledge that he actually was working and denied having talked with him on that day prior to the accident. She testified that she did not have supervisory duties, did not have authority to override the owner's orders, and, likewise, did not have authority to tell claimant not to work on the day he was injured. She indicated that she no longer worked for the defendant-employer.

Among the contested issues was the question of whether the injury occurred within the course and scope of the employment. Claimant asserted that because the injury occurred while he was working and because he was not prevented from working that day, the injury occurred within the course and scope of the employment and was compensable. After reviewing the conflicting evidence, the Administrative Law Judge (ALJ) who considered the claim noted that the entire case revolved around the credibility of the witnesses and determined that the testimony of the owner was more credible. The ALJ concluded that claimant was advised not to report for work on Friday, August 18, 1995, due to his physical problems; that claimant reported to work in direct contravention of the order; that the secretary had neither actual nor apparent authority to prohibit claimant from working on the date of the accident; and that the owner had no opportunity to prevent claimant from working on the day of the injury. Finally, the ALJ determined that the injury did not occur within the course and scope of the employment and dismissed the claim.

In a petition for reconsideration, claimant asserted that, instead of dismissing the claim, the ALJ should have reduced the permissible benefit by 15% pursuant to KRS 342.165(1). The petition was overruled. Pursuant to claimant's request, the ALJ did make a specific finding to the effect that although claimant was directed not to report for work on Friday, August 18, 1995, he was not discharged. Claimant appealed.

The decision was affirmed by the Workers' Compensation Board (Board) which relied upon the rationale expressed in *Fowler v. Baalmann,* 361 Mo. 204, 234 S.W.2d 11, 16–18 (Missouri 1950). The Court of Appeals concluded that the evidence did not compel a favorable conclusion and affirmed the decision of the Board. Claimant now appeals to this Court.

We have reviewed the evidence and the arguments of the parties. Having done so, we are not persuaded that the view of the evidence which was taken by the Board and the Court of Appeals in affirming those findings of fact which underpinned the ALJ's legal conclusion was either patently unreasonable or flagrantly implausible. The question, therefore, becomes whether the legal conclusion which was drawn from those findings was proper.

In *Fowler v. Baalmann,* the injured worker was an instructor-pilot who was scheduled to accompany a student pilot on an evening cross-country flight. After weather reports indicated unsuitable flying conditions, the worker was personally instructed by his supervisor that all flights were canceled. The airplane which was scheduled for the flight was placed in the hangar, and the hanger doors were closed, after which the supervisor and other superiors left work for the day. The worker remained at the company office, checked weather conditions, decided to make the flight, and was killed when the airplane crashed.

In deciding the case, the Missouri Supreme Court was faced with an argument that the case should be viewed as one in which the injury was work-related but in which the worker was injured as a result of disregarding a safety rule. The Court determined that more was involved than the mere disobedience of an order concerning the manner in which work duties should be performed. The Court explained that the employer had an unqualified right to limit the scope of the employment, and the employer had expressly ordered the worker not to undertake the flight in which he was killed. When the worker was ordered not to undertake the flight, the employment relationship ended for the day. Because the worker's presence at the place of his death was in direct contravention of the employer's express orders with regard to the scope of his duties, he did not go there as an employee of the business. Instead, his conduct was on a purely voluntary basis, unknown to and unaccepted by the employer. The Court concluded that, under those circumstances, the injury did not occur in the course and scope of the employment.

Here, the ALJ concluded that claimant was ordered not to report for work on Friday, August 18, 1995, that claimant reported for work in direct contravention of the order, that the secretary had no authority to prohibit claimant from working, and that the owner had no opportunity before the accident to prevent claimant from working. Although the result may seem harsh, we find the rationale which was expressed in *Fowler v. Baalmann* to be persuasive on these facts. Safety rules generally pertain to the manner in which work is to be performed; however, claimant's injury did not result from a failure to obey an order concerning the manner in which his work should be performed or concerning workplace safety. He was injured because he disobeyed an order not to work due to his physical condition.

The employer has never asserted that its order terminated the employment relationship altogether. The employer's argument is that the order suspended the employment relationship from the afternoon of Thursday, August 17, 1995, at least until Monday, August 21, 1995. In view of the potential dangers posed by claimant's physical condition and the unlikelihood that he would fully be able to perform his work duties, we believe that the employer was within his rights to order claimant not to report for work on August 18, 1995, and to return on the following Monday only if he was well enough to work. Because claimant was on the premises on that day in direct contravention of the employer's order, we are persuaded that he was not there as an employee of the business and that the injury did not occur in the course and scope of the employment.

The decision of the Court of Appeals is affirmed.

All concur.